**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TIMOTHY W. ELKINS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:18-cv-00203-SMY |
| ) | |
| THOMAS SCHMIDT, ) | |
| BLAKE SELLERS, ) | |
| BRANDY KOTZMANIS, ) | |
| ALISIA RUSHING, and ) | |
| VALERIE BASSETT, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Timothy W. Elkins, Jr. filed this action pursuant to 42 U.S.C. § 1983 claiming Defendants failed to provide him with adequate medical treatment and subjected him to unconstitutional conditions of confinement while he was a pretrial detainee at the Madison County Jail in 2017. This matter is now before the Court on Defendants' Motion for Summary Judgment (Doc. 107). For the following reasons, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

### **Procedural Background**

From January 31, 2017 through September 6, 2017, Plaintiff Timothy W. Elkins, Jr. was a pretrial detainee at the Madison County Jail ("the Jail"). He alleges that Defendants Brandy Kotzmanis, Alisia Rushing, and Valerie Bassett, all of whom are nurses at the jail, failed to provide him with adequate medical treatment for his dental and mental health needs and that they subjected him to unconstitutional conditions of confinement. He further alleges that Defendants Thomas Schmidt and Blake Sellers showed deliberate indifference to his serious medical needs after he

1

sustained a head injury on July 23, 2017.

Plaintiff filed an Amended Complaint in this case on April 23, 2018 (Doc. 22) and was allowed to proceed on the following claims based on the Court's threshold review pursuant to 28 U.S.C. § 1915A (Doc. 26):

Count 1: Defendants Kotzmanis, Rushing, and Bassett showed deliberate indifference to Plaintiff's serious medical and mental health needs involving his depression and anxiety in violation of the Fourteenth Amendment.

Count 2: Defendants Kotzmanis, Rushing, and Bassett showed deliberate indifference to Plaintiff's serious dental needs, ultimately resulting in Plaintiff having seven teeth removed, in violation of the Fourteenth Amendment.

Count 3: Defendant Schmidt subjected Plaintiff to unconstitutional conditions of confinement while he was housed in Block A, South, when Plaintiff was forced to drink hot water in violation of the Fourteenth Amendment.

Count 4: Defendants Schmidt and Sellers showed deliberate indifference to Plaintiff's serious medical needs resulting from a head injury on July 23, 2017, in violation of the Fourteenth Amendment.[1]

**Facts**

Construed in the light most favorable to Plaintiff, the evidence and reasonable inferences establish the following facts relevant to the pending summary judgment motion: Plaintiff suffered from various health issues prior to his incarceration. He was prescribed Xanax for a severe anxiety disorder in 2003. (Doc. 1, p. 6). In 2006, he underwent surgery for bowel issues, including a bowel rupture. (*Id.*, p. 7). Plaintiff alleges that he is an undiagnosed alcoholic and suffers from alcohol withdrawal, which causes him problems eating and using the restroom. (*Id.*)

---

[1] The threshold review of Plaintiff's Amended Complaint listed Schmidt as the intended defendant in Count 3. Defendants argue, and Plaintiff agrees, that Schmidt was not intended to be a party to this claim. Plaintiff contends that Kotzmanis, Rushing, and Bassett were the intended defendants.

**Mental Health Treatment**

During the time Plaintiff was detained, the Jail had a contract with Chestnut Health Systems ("Chestnut") for the referral of inmates for mental health services. (Doc. 108-1, pp. 15-16). Chestnut is a mental health and substance abuse provider that provided general mental health services to inmates at the jail in 2017. (*Id*., p. 17). Kotzmanis, Rushing, and Bassett each testified that they had training in recognizing mental health issues in inmates and that they were authorized to refer inmates for treatment with a Chestnut counselor, also known as "Crisis," if an inmate requested it or if an inmate appeared depressed or sad. (Doc. 107-18, pp. 37-38, 46-47; Doc. 107-27, pp. 14, 34; Doc. 107-29, pp. 16, 33-35, 44).

Kotzmanis and Rushing testified that Chestnut had a policy of only accepting suicidal inmates, but neither knew the exact date the policy was implemented. (Doc. 107-18, pp. 34-35; Doc. 107-27, pp. 32-33). Bassett testified that the Jail did not have a suicide policy in place until 2019. (Doc. 107-29, pp. 34-35). Julie Brugger, a representative from Chestnut, testified that Chestnut's policy at the time Plaintiff was detained was to accept any referral made by the jail for Crisis, regardless of whether an inmate was suicidal or not. (Doc. 108-1, p. 19).

On February 1, 2017 Plaintiff received a medical screening as part of the jail booking process. The screening was performed by Kotzmanis, a licensed practical nurse. (Doc. 107-20; Doc. 107-27, p. 53). Plaintiff told Kotzmanis about his history with anxiety, and he was continued on his prescription for Xanax. Plaintiff also began a regimen of other anxiety and depression medications. (Doc. 107-20; Doc. 107-19; Doc. 107-18, p. 100).

Shortly after being booked into the Jail, Plaintiff began to experience increased anxiety and depression. On February 9, 2017, Plaintiff submitted a sick call slip stating: "Feeling depressed and can't cry …Need to talk to someone. Missing my son and family bad. Would like to talk to

3

someone in the crisis center." (Doc. 107-2). Plaintiff was evaluated by Bassett, a licensed practical nurse, on February 10, 2017. Plaintiff's Xanax dosage was increased, but he was not referred to Chestnut. (Doc. 107-1, p. 46; Doc. 107-29, p. 40, 42-43).

On March 21, 2017, Plaintiff submitted a sick call slip that included a request for an increase in Xanax. (Doc. 107-3). He was evaluated by Rushing, a licensed practical nurse, on March 22, 2017. (Doc. 107-1, p. 48; Doc. 107-18, p. 81). Plaintiff's Xanax dosage was not increased after Rushing's evaluation. (Doc. 107-19).

Plaintiff submitted a sick call slip on April 3, 2017 stating that his Xanax was not working and that he needed an increased dosage. He reported that he was suffering from sleeplessness, a lack of appetite, depression due to the recent death of his son, bouts of crying, and indicated that he wanted to speak with a doctor. (Doc. 107-4). Plaintiff was evaluated by jail medical staff on April 4, 2017 and his Xanax dosage was increased. Dr. Blankenship, the jail's physician, reviewed Plaintiff's chart and confirmed the dosage adjustment. (Doc. 107-18, 83-84; Doc. 107-19).

On April 13, 2017, Plaintiff submitted a sick call slip stating: "I am having a hard time dealing with all this… I need help please…" (Doc. 107-5). He requested an increase in Xanax, noting issues with sleeping, weight loss, and depression. (Doc. 107-18, p. 88). Plaintiff was evaluated by Rushing and Dr. Blankenship on April 14, 2017. (*Id.*, p. 89). His Xanax dosage was increased and he was prescribed Desyrel, a psychotropic medication. (Doc. 107-18, p. 88; Doc. 107-19).

On April 29, 2017, Plaintiff submitted a sick call slip stating he was suffering from sleeplessness and requesting a change in his sleep medication. (Doc. 107-23; Doc. 107-29, p. 52). Plaintiff was evaluated by Bassett on April 30, 2017 and his sleeping medication was discontinued after the appointment. (Doc. 107-29, p. 52).

4

Plaintiff submitted a sick call slip on May 2, 2017 requesting more medication for depression, stating: "Not doing very good with all this." He asked to see the doctor if the nurses could not help him. (Doc. 107-6). Plaintiff was evaluated by Rushing on May 3, 2017 and his depression medication was not changed. (Doc. 107-1, p. 56, and Doc. 107-18, pp. 92-3).

On May 30, 2017, Plaintiff submitted a sick call slip requesting that the Prozac he was prescribed on May 27, 2017 be discontinued. (Doc. 107-9). On May 31, 2017, Plaintiff was evaluated by Rushing who explained that Plaintiff needed to wait a few days to determine if the medication was effective. (Doc. 107-1, p. 62; Doc. 107-18, pp. 99-100).

On May 31, 2017 and June 1, 2017, Plaintiff submitted sick call slips reporting continued issues with sleeplessness and Prozac. (Doc. 107-10; Doc. 107-11). Plaintiff was evaluated by medical staff on June 1, 2017, and Dr. Blankenship discontinued his Prozac prescription and placed him on Sinequan. (Doc. 107-18, p. 102).

On June 21, 2017, Plaintiff submitted a sick call slip requesting the discontinuation of his sleep medication and an increase in his dosage of Xanax. He noted issues with random bouts of crying, fast breathing, and anxiety. (Doc. 107-14). Plaintiff refused to be seen by medical staff and submitted a second sick call slip later that day cancelling his first request. (Doc. 107-1, p. 75; Doc. 107-15).

Plaintiff submitted a sick call slip on July 22, 2017 again requesting an increase in his Xanax dosage and stating that he felt like his head was going to explode, that he was having trouble breathing, and that he had neck pain due to his anxiety. (Doc. 107-16). He was evaluated by Kotzmanis on July 23, 2017 and denied having thoughts of self-harm. (Doc. 107-27, p. 65). Plaintiff's Xanax dosage was not changed. (Doc. 107-19).

On August 10, 2017, Plaintiff wrote a note stating he was having thoughts of killing himself

and gave the note to Officer Harold Wilson. (Doc. 107-1, p 80-82). He was placed on suicide watch and was referred to Crisis to speak with a mental health counselor at Chestnut. (*Id.*). Plaintiff never informed jail staff that he was suicidal prior to August 10, 2017. (*Id*. at 108).

### Dental Treatment

Plaintiff claims that his teeth were "bad" prior to his incarceration at the Jail and that they needed work. (Doc. 107-1, p. 48). He did not inform the Jail of his dental needs at his initial medical screening on February 1, 2017. (Doc. 107-20). At the time of Plaintiff's detention, the Jail provided inmates with access both to dental examinations by the jail medical staff and examinations by an external dentist.

During their depositions, the defendant nurses each testified that they received training for identifying medical issues related to an inmate's mouth, including dental issues. (Doc. 107-18, p. 30; Doc. 107-29, p. 14; Doc. 107-27, p. 13). Rushing testified the nurses were trained to identify abscesses, infections, fever, redness, broken teeth, or conditions that warranted antibiotics. (Doc. 107-18, p. 30). The nurses were authorized to refer inmates to an external dentist by adding the inmate's name to a list of dental appointments. (*Id*., p. 54). Inmates are placed on the dental list if they voice dental complaints, exhibit broken teeth, pain, or swelling. (Doc. 107-18, p. 52; Doc. 107-27, p. 22). Typically, two detainees were seen by the dentist each month. (Doc. 107-18, p. 55). Before being seen by the dentist, an inmate must be evaluated by the jail medical staff to determine if there is a need for antibiotics or pain medication. (Doc. 107-18, p. 53). Nurses at the Jail were authorized to have an inmate's appointment "bumped up" the dental list to see a dentist sooner depending on the severity of the inmate's dental issues. (Doc. 107-18, p. 61). Inmates could be "bumped up" the list for multiple abscesses, severe swelling, or an emergency situation. (*Id*.).

Plaintiff first complained about his dental issues on March 21, 2017 by submitting a sick call slip requesting that his teeth be pulled. (Doc. 107-3). Plaintiff was evaluated by Rushing on March 22, 2017. (Doc. 107-1, p. 48; Doc. 107-18, p. 81). During the evaluation, Rushing noted that Plaintiff had "broken teeth," but she did not observe any swelling, redness, or bleeding. (Doc. 107-18, p. 81, 86). On that same day, Bassett noted that Plaintiff had been placed on the dental list for an appointment in June of 2017. (Doc. 107-29, p. 46; Doc. 107-28). Plaintiff was not placed on pain medication. (Doc. 107-19).

Plaintiff's medical records show that on April 26, 2017, a member of the jail medical staff scheduled him for an outside dental care appointment for June 27, 2017. (Doc. 107-28; Doc. 107-27, p. 30). On May 29, 2017, Plaintiff submitted a sick call slip complaining of tooth pain and requesting an alternative drink to milk. (Doc. 107-8). He was seen by Rushing on May 30, 2017 and was prescribed Erythromycin, an antibiotic, and Motrin for pain. (Doc. 107-1, p. 61; Doc. 107-18, p. 98-9; Doc. 107-19).

On June 9, 2017, Plaintiff submitted a sick call slip inquiring about whether he had been placed on the dental appointment list. (Doc. 107-12). Plaintiff was evaluated by Rushing on June 10, 2017 and was informed that he would see the dentist later that month. (Doc. 107-1, p. 70; Doc. 107-18, p. 101). On June 17, 2017, Plaintiff submitted a sick call slip complaining of tooth pain (Doc. 107-13) and was evaluated by Rushing that day. (Doc. 107-1, p. 71; Doc. 107-18, p. 104). Rushing noted that Plaintiff was still taking Motrin. (Doc. 107-18, p. 104). Plaintiff was seen by an external dentist, Dr. English, on June 24, 2017 and had seven teeth extracted during the appointment. (Doc. 107-1, p. 83).

Plaintiff testified that his dental issues were exacerbated during his detention because he was placed in cells that only dispensed hot water. (Doc. 107-1, pp. 83-85). He needed cold water

7

due to his dental condition and hot water caused him dental pain. (*Id*. at 86). On, April 20, 2017, Plaintiff submitted a sick call slip requesting an alternative drink option because the milk he was given was making him sick and the water in his cell was hot. (Doc. 107-21). Plaintiff was not examined, but he was told by Kotzmanis to drink water. (Doc. 107-21; Doc. 107-18, p. 91).

On April 25, 2017, Plaintiff submitted a sick call slip stating there was still no cold water in his cell. (Doc. 107-22). Plaintiff was seen by Bassett on April 26, 2017 and told to drink water. (Doc. 107-29, p. 48). Bassett testified that the jail medical staff does not have the authority to direct what inmates may drink in their cells or to adjust the water temperature in the cells. (Doc. 107-29, p. 48-51).

On May 29, 2017, Plaintiff submitted a sick call slip complaining of tooth pain and requesting an alternative drink to milk. (Doc. 107-8). Plaintiff was seen by Rushing on May 30, 2017 and prescribed pain medication and antibiotics for his teeth. His drinking conditions were not addressed. (Doc. 107-1, p. 61; Doc. 107-18, pp. 98-99; Doc. 107-19).

### Treatment of Head Injury

Around 9:30 p.m. on July 23, 2017, Plaintiff informed Schmidt, a deputy, that he hit his head on the chuckhole and cut his forehead. (Doc. 107-1, p. 89; Doc. 107-25, p. 35). At the time of Plaintiff's injury, jail medical staff were not present because the incident occurred after the nightly lockdown. (Doc. 107-17, p. 28). Plaintiff showed Schmidt the laceration, but it was not bleeding by the time Schmidt saw it. (Doc. 107-25, p. 42). At his deposition, Plaintiff described the cut on his head as a "big hunk of skin" that he could "pull up and down." (Doc. 107-1, p. 92). Plaintiff did not suggest to Schmidt that he had lost consciousness upon hitting his head on the chuckhole (Doc. 107-1, p. 92) and he was not slurring his speech when communicating with Schmidt. (Doc. 107-25, p. 42).

8

Immediately after Plaintiff told Schmidt about his injury, Schmidt escorted Plaintiff to the infirmary and contacted Sellers, a sergeant and the shift supervisor on duty. Upon arriving in the infirmary, Sellers evaluated and cleaned Plaintiff's head wound, determined that stitches were not required, and applied a Steri-strip. (Doc. 107-17, p. 24; Doc. 107-18, p. 45). After receiving medical treatment from Sellers, Plaintiff was escorted back to his cell by Schmidt, who then filed a referral form for Plaintiff to be seen by jail medical staff the next morning. (Doc. 108-3; Doc. 107-26; Doc. 107-18, p. 52). Sellers testified that he did not contact the jail medical staff because, to his knowledge, Plaintiff had not lost consciousness and the laceration on Plaintiff's head was not bleeding. (Doc. 107-25, p. 44; Doc. 107-17, p. 7).

Under § 1100.5(a) of the Madison County SO Custody Manual, jail deputies are authorized to provide treatment in medical emergencies. (Doc. 108-2, 1100.5(a)). The Manual states: "It is understood that deputies are prohibited from giving medical advice or treatment to detainees unless authorized by medical staff or in a medical emergency." (Doc. 108-2, § 1100.5(a)). Schmidt testified at his deposition that he was trained to determine which injuries required stitches. (Doc. 107-25, p. 50). At the time of Plaintiff's incident, however, Schmidt did not believe Plaintiff needed to be taken to the hospital, stating that Plaintiff's forehead injury was minor and not an emergency. (Doc. 107-25, p. 46-49). Sellers testified that Plaintiff's injury was a medical emergency and that as a deputy, he was authorized to provide emergency medical treatment and did so. (Doc. 107-17, p. 16-17).

Plaintiff's head injury was evaluated by medical staff on July 24, 2017 and July 25, 2017. (Doc. 107-1, p. 105). Rushing evaluated Plaintiff on July 24, 2017 and did not observe any signs of a concussion or other head injuries. (Doc. 107-18, p. 109). Dr. Blankenship performed a follow-up evaluation on July 25, 2017. (Doc. 107-18, p. 111). Neither Rushing nor Dr. Blankenship

9

thought that Plaintiff required stiches. (*Id*.). Plaintiff claims that, because he did not receive stiches, he has a scar and thin skin where he was injured. (Doc. 107-1, pp. 95-97).

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do." *Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). In deciding a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012).

### Count 1 - Defendants Kotzmanis, Rushing, and Bassett for Inadequate Mental Health Treatment

The constitutional rights of pretrial detainees are derived from the Due Process Clause of the Fourteenth Amendment. See, *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). That is, pretrial detainees are to remain free from punishment. And, following the Seventh Circuit's recent decision in *Miranda v. County of Lake*, 900 F.3d 335, 351-352 (7th Cir. 2018), a pretrial detainee's Fourteenth Amendment right to medical care is violated if: (1) the detainee had an objectively serious medical need; (2) the defendant made an intentional act with regard to the plaintiff's medical need; (3) that act was objectively unreasonable under the circumstances in terms of treating or assessing the patient's serious medical need; and (4) the defendant "acted purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm. 900 F.3d at 353-354. Thus, the question to be answered is whether, given the totality of the circumstances, the individual

alleged to have provided inadequate medical care or inadequate access to medical care responded in an objectively reasonable manner. *See McCann v. Ogle County, Illinois*, 909 F.3d 881, 886 (7th Cir. 2018).

Defendants do not dispute that Plaintiff's mental health needs presented an objectively serious medical condition, but argue that they provided appropriate mental health treatment to Plaintiff because he was routinely seen by the jail medical staff and consistently prescribed medication for his mental health issues. Plaintiff argues that Defendants' failure to refer him for "Crisis" mental health services was objectively unreasonable under the circumstances because of the severity of his condition, his repeated reports that treatment was not working, and the ease with which they could have made the referral.

Plaintiff first requested a Crisis referral on February 9, 2017, but was not referred for outside mental health treatment until he threatened suicide on August 10, 2017. During the intervening six months, Plaintiff submitted ten sick call slips requesting various adjustments to his mental health treatment. Defendants repeatedly responded by adding new medications or adjusting his medication dosages, all without signs of success based on his persistent complaints. Nevertheless, Defendants argue that their evaluations of Plaintiff during this period establish that he was being appropriately treated by medical staff and that it was unnecessary to refer him to Crisis until he threatened suicide.

It is unclear whether the Jail had a suicide-related referral policy for referrals to Chestnut while Plaintiff was a detainee. According to Kotzmanis and Rushing, such a policy existed in 2017, but Bassett testified that there was no policy in place until 2019. Relatedly, a Chestnut representative testified that Crisis would have accepted any referral from the Jail during the relevant time period. That said, the existence or absence of a jail policy, in and of itself, is not

determinative of the reasonableness of Defendants' actions.

In view of the number and nature of mental health sick call slips submitted by Plaintiff in conjunction with his request for a referral request and his eventual threat of suicide, a jury could reasonably conclude that prescriptive treatment provided in lieu of a referral to Crisis was an insufficient and unconstitutional response to Plaintiff's mental health needs. See, *e.g.*, *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding that a reasonable juror could conclude that a doctor who refused to refer an inmate to a specialist over a two-year period was deliberately indifferent). A medical professional's choice of an easier, less efficacious treatment can rise to the level of a constitutional violation where the treatment is known to be ineffective but is chosen anyway. Here, the record would support a finding that Defendants opted to continue down the path of providing ineffective treatment for Plaintiff's worsening mental health status. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Because a genuine dispute of material fact exists as to whether the conduct of Kotzmanis, Rushing, and Bassett was objectively reasonable, they are not entitled to summary judgment on Plaintiff's claim of inadequate mental health treatment.

### Count 2 - Defendants Kotzmanis, Rushing, and Bassett for Inadequate Dental Treatment

The record also establishes that Plaintiff's dental issues presented an objectively serious medical condition as tooth decay can cause pain and is associated with a risk of infection. *Berry*, 604 F.3d at 440. And, Plaintiff contends that the 3-month delay in him receiving dental treatment caused him unnecessary pain. Defendants contend that their response to Plaintiff's dental needs was appropriate because he was routinely evaluated, was given pain medication and antibiotics, and was placed on a waitlist to see an external dentist.

Based on existing policy, Defendants had the ability to move up Plaintiff's dental appointment. According to Defendants, the June 24, 2017 appointment made for Plaintiff was the

earliest appointment available. At the same time, however, they also maintain that he was not "bumped up" the list because in their judgment, his situation did not present an emergency. In *Berry*, the Seventh Circuit concluded that a physician was not entitled to summary judgment where the evidence showed that she chose to continue treating an inmate's severe dental pain instead of referring him to a dentist, even when her attempts at pain management were ineffective. *Berry*, 604 F.3d at 442. The Court specifically found that "[t]he medical records and Berry's steady complaints of escalating pain indicate that the delay unreasonably prolonged Berry's suffering, making summary judgment inappropriate." *Id*. Summary Judgment is likewise inappropriate here. Plaintiff's dental issues were objectively serious – ultimately necessitating the extraction of 7 teeth. A jury could reasonably conclude that a 3-month delay in treatment, based at least in part on Defendant's determination that Plaintiff's condition did not amount to an emergency notwithstanding his continual complaints, was objectively unreasonable. As such, Plaintiff's claim against Kotzmanis, Rushing, and Bassett for inadequate dental treatment also survives summary judgment.

## Count 3 - Unconstitutional Conditions of Confinement Claim

The *Miranda* standard has been extended to all conditions-of-confinement claims brought by pretrial detainees. See, *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). However, because only "objectively [and] sufficiently serious" deprivations are actionable as a violation of the Constitution, a detainee still "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Conditions of confinement are "sufficiently serious" when they "deny [a detainee] the 'minimal civilized measure of life's necessities.'" *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The failure to provide adequate conditions of confinement

runs afoul of the due process clause if a plaintiff makes an objective showing of a sufficiently serious condition of confinement, and establishes that a defendant's conduct was objectively unreasonable. *Miranda*, 900 F.3d at 352-353.

In his Amended Complaint, Plaintiff alleges that he told Schmidt and other officers about the issue with hot water in his cell. (Doc. 22, p. 4). However, during his deposition, he clarified that he intended to bring Count 3 against Kotzmanis, Rushing, and Bassett and that Schmidt knew nothing about the hot water. (Doc. 107-1, p. 23). Moreover, Plaintiff failed to amend his Complaint to assert this claim against Defendants Kotzmanis, Rushing, and Bassett. Accordingly, Defendants are entitled to summary judgment on Count 3.

### Count 4 - Defendants Sellers and Schmidt for Inadequate Medical Treatment of Plaintiff's Head Wound

Defendants maintain that Plaintiff was not bleeding, did not lose consciousness, and did not require stitches or a trip to the emergency room for his head injury on July 23, 2017. Sellers cleaned the wound and put a Steri-strip on it, and Schmidt put in a referral for Plaintiff to see healthcare staff the following morning. At his deposition, however, Plaintiff testified that he got dizzy, fell, and lost consciousness, and that when he awoke, he had a gash on his head that needed stitches. Notwithstanding Plaintiff's opinion, there is no evidence that the cut on his head required stitches. A nurse and a doctor examined the injury within 2 days after Plaintiff's fall, and concluded that stitches and other emergency measures were unnecessary.

The issue is whether Defendants acted objectively reasonably. The Court finds, as a matter of law, that they did. Upon learning of Plaintiff's injury, Schmidt immediately contacted his supervisor, Sellers, for assistance. The medical staff was gone for the day, and Sellers did not call for assistance. Jail policy allowed Sellers to treat Plaintiff's wound and he did so. On these facts, Count 4 is subject to summary dismissal.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The motion is **DENIED** on the claims in Counts 1 and 2 against Kotzmanis, Bassett, and Rushing, and is **GRANTED** as to the claims asserted in Counts 3 and 4.

At the close of the case, the Clerk of Court shall enter judgment in favor of Defendants Schmidt, Kotzmanis, Bassett, and Rushing and against Plaintiff on Count 3 and in favor of Defendants Schmidt and Sellers and against Plaintiff on Count 4.

Plaintiff's claims against Defendants Kotzmanis, Bassett, and Rushing in Counts 1 and 2 remain pending and shall proceed to trial.

**IT IS SO ORDERED.**

**DATED:  August 12, 2020**

*s/ Staci M. Yandle*  
**STACI M. YANDLE**  
**United States District Judge**